UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLEN NEWLIN CHASE and MARGARET CHASE PERRY,<br><br>Plaintiffs,<br><br>-against-<br><br>WARNER BROS. ENTERTAINMENT, INC.; WARNER BROS. CONSUMER PRODUCTS, INC.; WARNER-OLIVE MUSIC LLC; WARNER BROS. HOME ENTERTAINMENT, INC.; CHUCK LORRE PRODUCTIONS, INC.; CBS CORPORATION; CBS CONSUMER PRODUCTS, INC.; TURNER BROADCASTING SYSTEM, INC.; FOX BROADCASTING COMPANY; FOX TELEVISION STATIONS, INC.; RIPPLE JUNCTION DESIGN CO.; and WILLIS MUSIC COMPANY,<br><br>Defendants. | Civil Action No. 1:15-CV-10063-NRB |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

PRYOR CASHMAN LLP
Tom J. Ferber
Rebecca M. Siegel
7 Times Square
New York, New York 10036-6569
tferber@pryorcashman.com
phone: (212) 421-4100
fax: (212) 798-6388

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT .................................................................................................................... 1

I.   PLAINTIFFS' CLAIM SHOULD BE DISMISSED BECAUSE
     NEWLIN'S LYRICS ARE IN THE PUBLIC DOMAIN ................................................. 1

     A.   Under Section 24 of the 1909 Act, the Right to Renew the Copyright in the
          Lyrics Belonged Exclusively to Newlin ................................................................. 1

     B.   *Faulkner* Is Dispositive and Requires Dismissal of Plaintiffs' Claim ...................... 3

     C.   Granting MacCarteney Permission to Publish the Lyrics in the Songbook Was
          *Not* an Assignment of Newlin's Copyright in the Lyrics .......................................... 5

     D.   Willis Did Not Renew the Copyright in the Songbook as a Composite Work ........... 8

II.  THE SECOND CIRCUIT'S DECISION IN *GOODIS* DOES NOT APPLY HERE ........ 10

## TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE(s)**

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................................2

Bobbs-Merrill Co. v. Straus,
    210 U.S. 339 (1908)......................................................................................................................6

Faulkner v. National Geographic Soc'y ("Faulkner I"),
    211 F. Supp. 2d 450 (S.D.N.Y. 2002), aff'd, 409 F.3d 26 (2d Cir. 2005)........................3, 4, 10

Faulkner v. National Geographic Soc'y ("Faulkner II"),
    220 F. Supp. 2d 237 (S.D.N.Y. 2002), aff'd, 409 F.3d 26 (2d Cir. 2005)..........................3, 4, 5

Goodis v. United Artists Television, Inc.,
    425 F.2d 397 (2d Cir. 1970)......................................................................................................10

Hutson v. Notorious B.I.G., LLC,
    No. 14-cv-2307(RJS), 2015 WL 9450623 (S.D.N.Y. Dec. 22, 2015)........................................2

Island Software & Computer Serv., Inc. v. Microsoft Corp.,
    413 F.3d 257 (2d Cir. 2005)........................................................................................................2

Rapoport v. Asia Elecs. Holding Co.,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)..........................................................................................2

Roy Export Co. v. Columbia Broad. Sys., Inc.,
    672 F.2d 1095 (2d Cir. 1982)......................................................................................................6

Self-Realization Fellowship Church v. Ananda Church of Self-Realization,
    206 F.3d 1322 (9th Cir. 2000) ...........................................................................................4, 7, 8

Shoptalk, Ltd. v. Concorde-New Horizons Corp.,
    168 F.3d 586 (2d Cir. 1999)........................................................................................................6

**STATUTE**                                                              **PAGE(s)**

Copyright Act of 1909 § 24 (repealed 1976) ...................................................... 1, 3, 6, 8

**TREATISES**

1 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 3.04[A] (Rev. Ed.) ................ 1

3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 9.05[D][1][a] (Rev. Ed.) ........................................................................................................... 4

3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 10.01[B][2] (Rev. Ed.) ........................................................................................................... 6

3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 10.01[C][2] (Rev. Ed.) ........................................................................................................... 7

Faced with precedent in this jurisdiction which is directly on point and dispositive of Plaintiffs' claim, Plaintiffs' opposition to Defendants' motion to dismiss ("Opp.") employs a strategy of avoidance and obfuscation. Plaintiffs have larded their Opposition with recitations of irrelevant facts and inapposite case law, burying two scant paragraphs about that precedent – the Faulkner case – which they describe inaccurately and to which they offer purported distinctions which do not exist. An examination of the language of Section 24 of the Copyright Act of 1909 (the "1909 Act") and the applicable case law establish that the copyright in the Lyrics[1] lapsed in 1965, after Newlin failed to renew the copyright which the FAC alleges she retained therein.

ARGUMENT

I.   **PLAINTIFFS' CLAIM SHOULD BE DISMISSED BECAUSE
     NEWLIN'S LYRICS ARE IN THE PUBLIC DOMAIN**

    A.    **Under Section 24 of the 1909 Act, the Right to Renew
     the Copyright in the Lyrics Belonged Exclusively to Newlin**

The language of Section 24 of the 1909 Act is both clear and dispositive. Renewal registrations in composite works such as the Songbook were covered by the first proviso in Section 24, which states, in pertinent part: "in the case of any ... composite work upon which the copyright was originally secured by the proprietor thereof [*i.e.,* Willis], ... the proprietor of such copyright [*i.e.,* the copyright in the composite work Songbook] shall be entitled to a renewal...." Thus, a composite work copyright registration was renewable by the proprietor of the existing registration.[2] Renewal of the copyright in the Lyrics, however – which were Newlin's *individual contribution* to a composite work – was governed by the second proviso of Section 24. That proviso covered renewals in "other" types of works – *i.e.,* works *other* than the composite work

---

[1] Defined terms have the same meaning as they had in Defendants' moving memorandum of law.

[2] Copyrights in composite works cover only those elements that are original to the claimant, and do not include contributions by individual authors who retain their copyrights. See, e.g., 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer") § 3.04[A] (Rev. Ed.).

Songbook – *specifically "including a contribution by an individual author to a ... composite work...."* While Willis, as the proprietor of the copyright in the Songbook, had the right to renew the copyright in the Songbook *as a whole*, it had no right to file a renewal registration covering Newlin's individual contributions to the Songbook in which she allegedly retained ownership. Accordingly, renewal of the Lyrics was Newlin's right and responsibility if, as the FAC alleges, she retained copyright ownership of the Lyrics. (See FAC ¶¶ 2, 30.)

This reading of Section 24 is supported by the Copyright Office instructions included on the actual "Certificate of Registration of a Claim to Renewal Copyright" issued in 1964 ("Renewal Certificate").[3] The Renewal Certificate includes a section entitled "Who may claim renewal." (Ferber Decl., Ex. A.) The instructions state: "Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term...." (emphasis added). The five exceptions are listed in Part B, and while B.2 includes "composite works," none of the five categories applies to the Lyrics, which were an *individual contribution to* a composite work. Id. Newlin was the "individual author" of the Lyrics, so regardless of who owned the copyright to them in the original term, since the Lyrics were not one of the five types of works listed in Part B, *the*

---

[3] While the FAC specifically refers to the renewal registration (id. at ¶¶ 3, 37-38, 60), and purports to attach the renewal certificate (id. at ¶ 37), it attaches only the "Application" for renewal ("Renewal Application"), not the actual renewal certificate. (See id. at Ex. 3.) Accordingly, a copy of the Renewal Certificate is submitted as Exhibit A to the accompanying Reply Declaration of Tom J. Ferber, dated September 28, 2016 ("Ferber Decl."). The Renewal Certificate, which bears page numbers 3 and 4, appears to have been part of the same document which contained the Application, which bears page numbers 1 and 2. (Compare Ferber Decl., Ex. A with FAC, Ex. 3.) Because the Renewal Certificate is a publicly available document that is repeatedly referred to and is integral to the FAC, it is properly considered on a 12(b)(6) motion. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (noting that, on a motion to dismiss, a court may consider "statements or documents incorporated into the complaint by reference, ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); Hutson v. Notorious B.I.G., LLC, No. 14-cv-2307(RJS), 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (considering a copyright registration provided by defendants on their motion to dismiss because it is a matter of public record and integral to the complaint); Rapoport v. Asia Elecs. Holding Co., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (considering two documents referenced in the amended complaint but not attached thereto); see also Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) (noting that a district court can take judicial notice of federal copyright registrations).

2

*law gave the right to claim renewal to Newlin and no one else.*  Because she failed to exercise

that right, the Lyrics are no longer protected by copyright.

### B.    *Faulkner* **Is Dispositive and Requires Dismissal of Plaintiffs' Claim**

The case law in this jurisdiction specifically addressing who had the right to renew the

copyright in individual contributions to composite works under the 1909 Act – Faulkner v.

National Geographic Soc'y, 211 F. Supp. 2d 450 (S.D.N.Y. 2002) ("Faulkner I"), and Faulkner

v. National Geographic Soc'y, 220 F. Supp. 2d 237 (S.D.N.Y. 2002) ("Faulkner II"), aff'd, 409

F.3d 26 (2d Cir. 2005) (affirming, *inter alia*, both Faulkner I and II) – is dispositive and requires

the dismissal of the FAC.  Not surprisingly, Plaintiffs avoid Faulkner, conspicuously limiting

their discussion of it to two paragraphs in which they misstate the Faulkner court's rulings and

strain to offer nonexistent distinctions.  (Opp. at 12-13.)

Plaintiffs actually offer no response to Faulkner I, in which the court granted partial

summary judgment dismissing the claims based on NGS's republication of the Arthur Allen

works (the "Allen Works") without permission.  The court dismissed those claims as a matter of

law due to the absence of any renewal registrations in the Allen Works by Arthur Allen or his

son and successor-in-interest, David.  Faulkner I, 211 F. Supp. 2d at 463-66.  Significantly, the

court rejected David Allen's argument – which was the same as Plaintiffs' herein – that NGS's

renewal registrations for the composite works in which Arthur Allen's works were first included

saved those individual contributions from the public domain.  Id.  Plaintiffs' Opposition is silent

on Faulkner I, pursuant to which either (i) Newlin owned the Lyrics, as Plaintiffs allege, but

Newlin's failure to renew the copyright therein injected them into the public domain, or (ii) the

renewal registration protected the copyright in the Lyrics by virtue of Willis's or MacCarteney's

ownership of them, in which case there could be no infringement. Id. at 466.[4]

Plaintiffs' Opposition addresses only Faulkner II, in which the court denied the plaintiffs' motion for reconsideration as being entirely meritless and potentially sanctionable. 220 F. Supp. 2d at 238. Plaintiffs' effort to distinguish Faulkner II, however, is equally meritless because it is based on a misleadingly incomplete quotation from that case. Plaintiffs incorrectly assert that Faulkner II "held that a proprietor's renewal of the copyright in the composite work would also serve to renew the copyrights in 'any individual contributions that it initially held copyright ownership in.'" (Opp. at 12-13, quoting Faulkner II, 220 F. Supp. 2d at 239.[5]) That is not what Faulkner II said. The court's distinction was not based on whether the composite work proprietor had allegedly owned, as Plaintiffs assert a pre-publication interest in the so-called "common law copyright" in an individual contribution – which terminated when the initial statutory term commenced[6] – but whether the composite work proprietor had owned a copyright interest in such contribution in the first term of statutory protection.

Significantly, the court rejected the plaintiffs' argument – like that of Plaintiffs here – that both NGS and David Allen had the right to renew the registrations in the Allen Works, noting that such argument ignored the distinction between who had the right to renew copyrights

---

[4] This is not controverted by Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322 (9th Cir. 2000) ("SRF Church"), as Plaintiffs suggest. Specifically, Plaintiffs assert that while the 1940 Amendment to Section 24 "'granted a new renewal right in individual authors of magazine contributions,' it 'did not extinguish the pre-existing right in the magazine publisher' to renew the copyright in the contribution." (Opp. at 11 (quoting SRF Church, 206 F.3d at 1329) (emphasis added).) Despite Plaintiffs' bold attempt to append the italicized language to the quotation, this is not what the Ninth Circuit held. See SRF Church, 206 F.3d at 1329 ("In Abend, we recognized that the 1940 amendment granted a new renewal right in individual authors of magazine contributions. The discussion in Abend makes clear, however, that this new right did not extinguish the pre-existing right in the magazine publisher."). Rather, as Nimmer explicitly emphasized, "the Ninth Circuit [decision in SRF Church] clarified that this new right for an individual contributor to file for renewal does not extinguish the magazine publisher's pre-existing right to renew the work as a periodical" – i.e., as a composite work. 3 Nimmer § 9.05[D][1][a], n.140 (emphasis added) (citing SRF). Indeed, on the very next page of their brief, Plaintiffs themselves quote this excerpt from Nimmer See Opp. at 12 (quoting 3 Nimmer § 9.05[D][1][a], n.140).

[5] The Opposition incorrectly cites to 220 F. Supp. 2d at 240. (Opp. at 12-13.)

[6] See Point I.C., infra.

in composite works as opposed to the individual contributions to such works. In the sentence incompletely quoted in the Opposition, the <u>Faulkner II</u> court actually stated as follows:

> Section 24 … gave the proprietor of a collective work the right to renew its copyrights in the collective work itself (*i.e.*, the collection, arrangement, and display of the constituent parts) and any individual contributions that it initially held copyright ownership in, <u>but it did not create a renewal right for contributions in which the proprietor had no copyright ownership interest **in the initial term.**</u>

220 F. Supp. 2d at 239 (emphasis added). Plaintiffs therefore fail in their attempt to distinguish <u>Faulkner II</u>.[7]

### C.   Granting MacCarteney Permission to Publish the Lyrics in the Songbook Was *Not* an Assignment of Newlin's Copyright in the Lyrics

By granting MacCarteney permission to publish the Lyrics in the Songbook, Newlin did not assign either her common law copyright or her copyright interest in the initial statutory term.

The FAC alleges that Newlin wrote the Lyrics at the request of MacCarteney, who was compiling the Songbook, and that she gave MacCarteney "permission" to use the Lyrics "for the first time" in the Songbook, but "otherwise intended to and did retain her copyright and all other rights in the [L]yrics." (FAC ¶¶ 2, 27-30.) Based on these factual allegations, the FAC offers the legal conclusion that Newlin's "permission" constituted a transfer of the right of first publication (<u>id.</u> at ¶ 30), which Plaintiffs assert is the same as the "common law copyright." (Opp. at 2, 6-7.) If, as Plaintiffs allege, Newlin gave MacCarteney permission only to publish the Lyrics for the first time in the Songbook but "retain[ed] all other rights," then Willis had no

---

[7] Plaintiffs' counsel also tried to distinguish <u>Faulkner II</u> in their June 17, 2016 pre-motion letter to the Court. That letter, however, asserted that "Willis owned a copyright interest in the Lyrics <u>in the first term</u>, consisting of the common law copyright and right of first publication transferred by Plaintiffs' mother." (Dkt. No. 25 at 2 (emphasis added).) While Plaintiffs' assertion that Newlin transferred her common law copyright is incorrect, as is explained below, Plaintiffs have acknowledged that copyright ownership "in the first term" is required for the renewal in the composite work to cover an individual contribution (*i.e.*, because the proprietor owns both the composite work and the contribution in question). Apparently recognizing that they cannot satisfy this prerequisite, Plaintiffs' Opposition studiously avoids reference to ownership of the Lyrics *in the first term* and fails to offer a complete and accurate quotation from <u>Faulkner II</u>, as set forth above.

ownership interest in the Lyrics <u>in the initial term</u> of statutory protection,[8] because the common law copyright terminated upon first publication, and only then did the initial term of copyright commence.  See <u>Shoptalk, Ltd. v. Concorde-New Horizons Corp.</u>, 168 F.3d 586, 590 (2d Cir. 1999) ("Once . . . a third party publishes the work with the consent of the author, the author's common-law right of first publication ends."); see also <u>Bobbs-Merrill Co. v. Straus</u>, 210 U.S. 339, 347 (1908) (common-law and statutory "rights do not co-exist in the same composition; when the statutory right begins the common-law right ends"); <u>Roy Export Co. v. Columbia Broad. Sys., Inc.</u>, 672 F.2d 1095, 1101 n.13 (2d Cir. 1982) ("a single work cannot be protected from copying under both federal and state law at the same time").  Therefore, the distinction which Plaintiffs attempt to draw in <u>Faulkner II</u> based on the legal conclusion that Willis owned a common law copyright interest in the Lyrics does not exist.

Moreover, the legal conclusion upon which Plaintiffs' position is based – that Newlin's "permission" to publish the Lyrics for the first time in the Songbook constituted a "transfer" or assignment of Newlin's "common law copyright" – is both incorrect and actually undermines their position.  Under the 1909 Act, common law copyright – *i.e.,* the right to control the first publication of a work – represented the totality of an author's copyright interest prior to publication.  An assignment of an author's common law copyright "completely divest[ed] the author of his rights. ...  After such an assignment, the author became a stranger to the copyright...."  3 Nimmer §10.01[B][2].  Therefore Newlin could not have retained any copyright interest if she had truly transferred everything she had – *i.e.,* common law copyright – prior to publication.  However, Newlin *did* control the first publication of the Lyrics when she gave

---

[8] Indeed, the Opposition specifically asserts that "the Songbook was a collective work made up of many <u>individual contributions</u> of music or <u>lyrics [such as Newlin's]</u> *whose copyrights ... were held by their authors*."  (Opp. at 4 (emphasis added).)

MacCarteney "permission" specifically allowing for the Lyrics to be published for the first time *in the Songbook* (FAC ¶ 29), as opposed to giving MacCarteney the right to publish them however she might thereafter choose. This was a license, not an assignment of ownership. See, e.g., 3 Nimmer § 10.01[C][2] ("If an author of an unpublished (and unregistered) manuscript granted to a magazine publisher the right to reproduce the work in magazine form, but reserved all other rights. . . the publisher would be merely a licensee, and not the proprietor of the work."). Since Newlin did not give up the right to control the first publication of the Lyrics, the FAC's legal conclusion that the "permission" she gave MacCarteney constituted an assignment of ownership of her common law copyright is incorrect.[9]

      This distinction demonstrates why Plaintiffs' reliance on the Ninth Circuit's decision in SRF Church is misplaced. Besides not being the law in this Circuit, SRF Church – unlike the present case – *did* concern an author's assignment of the *totality* of his copyright, with no rights being "retained." Specifically, in SRF Church, the plaintiff church ("SRF") sued a breakaway church for the unauthorized copying of certain articles written by SRF's founder, Swami Yogananda, that were first published in periodicals with blanket copyrights in the name of SRF. 206 F.3d at 1324-25. On appeal, the court considered, *inter alia*: (1) whether SRF had validly obtained a copyright interest in the articles by virtue of a full assignment from Yogananda, and (2) whether SRF was entitled to renew any copyrights it validly obtained in Yogananda's individual articles that appeared in SRF's periodicals. Id. at 1324-26. The Ninth Circuit, reversing summary judgment, held that: (1) SRF had presented triable issues as to whether Yogananda had successfully assigned his copyrights in the articles to SRF prior to publication in

---

[9] In addition, the absence of any writing memorializing Newlin's alleged "permission" or "transfer" of the right to publish the Lyrics in the Songbook while allegedly retaining all other rights in them, raises the question of how Plaintiffs could have admissible evidence of such a transfer/retention by their late mother.

SRF's periodicals; and (2) if SRF succeeded at trial in proving that Yogananda had assigned to SRF his copyright interests in the individual articles without any reservation of rights, SRF's renewal of the copyrights in the articles was valid under section 24 of the 1909 Act. Id.

Plaintiffs rely on the Ninth Circuit's reference to Yogananda's assignment of his "common law copyright" in the subject articles to argue that since the FAC includes the legal conclusion that Newlin's "permission" to MacCarteney to publish the Lyrics for the first time in the Songbook represented a transfer of "common law copyright," MacCarteney's renewal registration also renewed copyright protection for the Lyrics. (Opp. at 11-12.) However, unlike Plaintiffs' reference to Newlin's purported transfer of "common law copyright" – which is incorrect for the reasons stated above – the reference to Yogananda's assignment of his common law copyright in SRF Church concerned a *complete assignment* of his copyright interests, with no rights being "retained." SRF's opening brief to the Ninth Circuit[10] confirms this. SRF had submitted evidence that "Yogananda intended SRF to own the copyrights in his writings" (Ferber Decl., Ex. B at 44), that Yogananda had not "intended to reserve any of the copyrights in the disputed articles" (id. at 48), that the plaintiff was "the owner of the copyright on all of the copyrightable components of its periodicals" [i.e., including articles authored by Yogananda] (id. at 51), and of "Yogananda's statements that he had … an intent to transfer the works to SRF" as "his assignee" (id. at 62). Thus, the issue in SRF Church was whether Yogananda had assigned the totality of his copyrights in the subject articles, while Plaintiffs herein expressly allege that Newlin did no such thing.

**D.    Willis Did Not Renew the Copyright in the Songbook as a Composite Work**

Since Newlin never filed for a renewal in the Lyrics, Plaintiffs' claim relies on the

---

[10] A copy of SRF's Opening Brief ("SRF App. Br.") is attached as Ex. B to the Ferber Declaration.

argument that the renewal registration for the Songbook filed by Willis "also served to renew [Newlin's] separate copyright in the [Lyrics]." (FAC ¶¶ 37-38.) This argument is without merit.

Willis was not the claimant on the renewal registration. Rather, as the FAC acknowledges, Willis merely filed a renewal registration *on behalf of MacCarteney as claimant*. (FAC ¶¶ 3, 37.) Moreover, the Renewal Certificate is *not* for the Songbook as a composite work. The Renewal Certificate states that MacCarteney, "claiming as author," had obtained a renewal registration for "words and music" in the Songbook. (See Ferber Decl., Ex. A at Parts 1(a), 2 and 4.) This was consistent with the original "Class E" registration which, as noted in the renewal application, was for *musical compositions*, as opposed to a book, which would have been in "Class A." (See FAC, Ex. 3 at p.2.)[11] It was also consistent with the Copyright Office's instructions for "who may claim renewal" discussed at Point I, *supra* (Ferber Decl., Ex. A): *i.e.,* it was MacCarteney, as the "individual author of the work" (the words and music which she had written) who had the right to claim the copyright renewal therein. Willis did not claim the renewal registration because, not being the "individual author," it had no right to do so with respect to the musical compositions which were the subject of the original registration.

The Renewal Certificate naming MacCarteney as claimant was not for a copyright in the Songbook as a composite work because "composite works" were among the specifically excepted types of works for which section 24 gave the right to claim renewal to the proprietor (*i.e.,* the owner of the copyright at the time of the renewal registration). Willis was the proprietor of that copyright at the time,[12] but it made no such filing.

---

[11] Plaintiffs acknowledge that the original registration was for musical compositions. (FAC ¶¶ 3, 36.)

[12] Willis was identified in the Songbook's copyright notice as the proprietor of the copyright therein (see FAC ¶ 36 & Ex. 1 at 2), and was also the claimant in the original copyright registration (see FAC, Ex. 2 (Entry No. 37)).

Since there was no renewal registration filed by Willis for the Songbook as a composite work, there could be no registration that covered Newlin's contributions thereto, and the Lyrics entered the public domain at the end of the initial term.

## II.      THE SECOND CIRCUIT'S DECISION IN *GOODIS* DOES NOT APPLY HERE

Plaintiffs' reliance on Goodis v. United Artists Television, Inc., 425 F.2d 397 (2d Cir. 1970), is entirely misplaced. Specifically, Plaintiffs attempt to stretch the facts of Goodis – a decision specifically limited to the notice context – to avoid the consequences of Newlin's failure to renew her copyright in the Lyrics. However, as Faulkner I made clear, "the logic of Goodis does not apply to [the author's] failure to obtain renewal registration." Faulkner I, 211 F. Supp. 2d at 465. The Goodis court was "concern[ed] with the hazards facing an unwary author who had to depend on the actions of others – namely publication with proper notice – in order to obtain copyright protection." Id. at 466 (emphasis added). In contrast, Newlin – just like the Allens in Faulkner I – "needed no one but [herself] to file a claim for renewal. [She] faced no trap for the unwary – [she] simply failed to take even the most basic steps to protect the [Lyrics] for which [she] now claim[s] to own the copyright[]." Id. (footnote omitted). While Goodis may stand for "the general proposition" that courts should avoid unnecessarily harsh forfeitures when possible, "it is not a license for plaintiffs to sit on their hands for no apparent reason." Id. Newlin was not at the mercy of any publisher and was fully able to renew her copyright in the Lyrics had she elected to do so. Thus, as the Faulkner court made clear, Goodis cannot salvage Plaintiffs' claim. Because Newlin "failed to take even the most basic steps to protect the [Lyrics]" by filing a renewal registration, the Lyrics are now in the public domain. Id.

Dated:   New York, New York
         September 28, 2016

                              PRYOR CASHMAN LLP

                              By: _____
                                    Tom J. Ferber
                                    Rebecca M. Siegel
                              7 Times Square
                              New York, New York 10036
                              (212) 421-4100
                              tferber@pryorcashman.com
                              rsiegel@pryorcashman.com

                              *Attorneys for Defendants*