UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
ELLEN NEWLIN CHASE and
MARGARET CHASE PERRY,

               Plaintiffs,

        - against -

WARNER BROS. ENTERTAINMENT, INC.;
WARNER BROS. CONSUMER PRODUCTS, INC.;      **MEMORANDUM AND ORDER**
WARNER-OLIVE MUSIC LLC;
WARNER BROS. HOME ENTERTAINMENT, INC.;    15 Civ. 10063 (NRB)
CHUCK LORRE PRODUCTIONS, INC.,
CBS CORPORATION; CBS CONSUMER
PRODUCTS, INC.; TURNER BROADCASTING
SYSTEM, INC.; FOX BROADCASTING COMPANY;
FOX TELEVISION STATIONS, INC.;
RIPPLE JUNCTION DESIGN CO.; and
WILLIS MUSIC COMPANY,

               Defendants.
-----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


Plaintiffs Ellen Newlin Chase and Margaret Chase Perry sued defendants[1] under the Copyright Act, 17 U.S.C. § 101, et seq., for infringing plaintiffs' copyright in the lyrics to the song "Warm Kitty."  Defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motion is granted.

---

[1] Defendants are Warner Bros. Entertainment, Inc., Warner Bros. Consumer Products, Inc., Warner-Olive Music LLC, Warner Bros. Home Entertainment, Inc., Chuck Lorre Productions, Inc., CBS Corporation, CBS Consumer Products, Inc., Turner Broadcasting System, Inc., Fox Broadcasting Company, Fox Television Stations, Inc., Ripple Junction Design Co., and Willis Music Company.

I.    BACKGROUND[2]

Plaintiffs are the daughters of Edith Newlin, a nursery school teacher who wrote children's poems and stories.  Am. Compl. ¶¶ 24, 25.  In the early 1930s, Newlin was asked by Laura Pendleton MacCarteney to write lyrics for a songbook that MacCarteney planned to publish.  Id. ¶¶ 27, 28.  Newlin agreed, and wrote the following lyrics (the "Lyrics"):

> Warm kitty, soft kitty,
> Little ball of fur,
> Sleepy kitty, happy kitty,
> Purr! Purr! Purr!

Id. ¶ 28.

MacCarteney included the lyrics in a book titled Songs for the Nursery School, which defendant The Willis Music Group ("Willis Music") published in 1937.  Id. ¶¶ 31, 32.  The songbook has a blanket copyright notice in Willis Music's name on its title page and an "Acknowledgments" page on which MacCarteney thanks Newlin and other individuals and companies "who have so kindly given permission to use the respective copyrights in the preparation of this book."  Id. ¶¶ 31, 34.

Songs for the Nursery School was registered as a musical composition with the United States Copyright Office on November 17, 1937.  Id. ¶ 36.  The registration identifies Willis Music as

---

[2] The following allegations are taken from plaintiffs' amended complaint, filed on March 14, 2016 (ECF No. 11) (the "Amended Complaint" or "Am. Compl."), and its attached exhibits.

the claimant.  Id.  The registration was renewed on June 22, 1964, identifying Willis Music as the original claimant and MacCarteney as the renewal claimant.  Id. ¶ 37, Ex. 3 at 1.

At some point in the 2000s, defendants began using the Lyrics in a slightly modified form, including on the television show "The Big Bang Theory" and in related promotions.  Id. ¶¶ 47, 50-60. Plaintiffs claim that such use violates their copyright in the Lyrics, which they inherited from their mother when she died in 2004.  Id. ¶¶ 40, 63.

Plaintiffs filed their initial complaint on December 28, 2015, and filed the Amended Complaint on March 14, 2016.  The Amended Complaint asserts a single copyright infringement claim under Section 106 of the Copyright Act, 17 U.S.C. § 106. Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiffs do not have a valid copyright in the Lyrics.

## II.   DISCUSSION

### A.    Standard

#### 1.    Rule 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, we must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  To survive the motion, the complaint's well-pleaded factual allegations must "plausibly give rise to an

entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  A claim has "facial plausibility" when plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.  A court, however, need not accept conclusory allegations as true.  Harris, 572 F.3d at 72.

   2. The Copyright Act

  To establish a copyright infringement claim, plaintiffs must establish that they (1) owned a valid copyright, (2) which was copied.  Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010).

  Copyrights to works published before 1978 are governed by the Copyright Act of 1909 (the "1909 Act").  Shoptalk, Ltd. v. Concorde-New Horizons Corp., 168 F.3d 586, 590 (2d Cir. 1999); see also 17 U.S.C. § 301(b)(2).  Under the 1909 Act, an author held a common law copyright until the work was first published.  Sanga Music, Inc. v. EMI Blackwood Music, Inc., 55 F.3d 756, 758 (2d Cir. 1995).  Once published with notice, the common law copyright was extinguished and the federal Copyright Act provided the exclusive copyright protection.  Id. at 758-59.

  The 1909 Act granted an initial 28 year copyright term.  17 U.S.C. § 24 (1909 Act) (repealed); 3 Nimmer on Copyright § 9.05[A][1].  Section 24 of the 1909 Act addressed copyright renewal in two provisos:

4

*Provided*, That in the case of any . . . composite work upon which the copyright was originally secured by the proprietor thereof, . . . the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years . . . :

*And provided further*, That in the case of any other copyrighted work, including a contribution by an individual author to a . . . composite work, the author of such work . . . shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years . . . .

17 U.S.C. § 24 (1909 Act) (repealed). Failure to renew automatically resulted in the work entering the public domain. Id.; 3 Nimmer on Copyright § 9.05[A][1].

B.   **Application**

The parties agree that Songs for the Nursery School is a "composite work" and that Willis Music was the book's "proprietor." The parties also agree that the Lyrics were a "contribution" to the songbook. Because Newlin is not alleged to have registered or renewed the Lyrics herself, the only issue is whether Willis Music's 1964 renewal of the registration for Songs for the Nursery School also renewed Newlin's copyright in the Lyrics.[3] That issue requires interpreting Section 24.

_____

[3] As defendants point out in their reply memorandum, Willis Music did not actually renew its registration. Rather, the 1964 registration identified *MacCarteney* as the renewal claimant. Am. Compl. ¶ 37, Ex. 3 at 1. Although potentially fatal to plaintiffs' claim, we do not dismiss on this basis since defendants only raised the argument in their reply memorandum and plaintiffs have not had an opportunity to respond.

Section 24 is hardly a model of clarity.  See generally 3
Nimmer on Copyright § 9.03[B] ("The determination whether the
proprietor or the individual author is entitled to renewal rights
in a composite work presents a problem of great difficulty to which
the language of the Act is of little assistance. . . . [N]othing
is certain in this puzzling domain."); Barbara A. Ringer, Copyright
Law Revision Study No. 31: Renewal of Copyright (1960) at 143
("Unfortunately, the present language of the contributions clause
is the result of an ill-considered amendment in 1940, which has
thrown the renewal of contributions into complete confusion.").

Under Section 24's first proviso, a proprietor was entitled
to renew the copyright in any "composite work upon which the
copyright was originally secured by the proprietor thereof."  17
U.S.C. § 24 (1909 Act) (repealed).  Thus, the first proviso only
granted a proprietor the right to renew copyrights in the composite
work itself, i.e., the collection, arrangement, and display of its
composite parts, rather than the individual contributions or
components.  Under Section 24's second proviso, which applied to
"any other copyrighted works, including the contribution by an
individual author to a . . . composite work," the right to renew
was granted to the author.  Id.  Thus, Section 24 granted the
proprietor the right to renew composite elements and the individual
author the right to renew his contributions.  The proprietor would

6

also have the right to renew any copyrights it owned as the original author or by assignment.

The limited case law interpreting Section 24 reaches the same conclusion.  In Faulkner v. National Geographic Society, which involved nearly identical circumstances as here, Judge Kaplan rejected the argument that the proprietor could renew a copyright held by an individual contributor:

> Section 24 . . . gave the proprietor of a collective work the right to renew its copyrights in the collective work itself (i.e., the collection, arrangement, and display of the constituent parts) and any individual contributions that it initially held copyright ownership in, but it did not create a renewal right for contributions in which the proprietor had no copyright ownership interest in the initial term. . . . By its very terms . . . Section 24 gave the right to renew as to a particular contribution either to the proprietor (assuming it had obtained an initial interest in the contribution . . .) or the author, but not both.

220 F. Supp. 2d 237, 239 (S.D.N.Y. 2002), modifying, 211 F. Supp. 2d 450, 466 (S.D.N.Y.), aff'd on other grounds sub nom. Faulkner v. Nat'l Geographic Enterprises Inc., 409 F.3d 26 (2d Cir. 2005).

The Ninth Circuit reached a similar conclusion in Self-Realization Fellowship Church v. Ananda Church of Self-Realization.  The Court first noted that the "weight of the case law has concluded that . . . a blanket copyright [in a composite work] gives a . . . publisher rights in an individual contribution only if the publisher owns the common law copyright as the author of the contribution, or as the author's assignee."  206 F.3d 1322,

7

1325 (9th Cir. 2000).  The Court then found that a proprietor was only entitled to renew the copyright to individual contributions if it could establish that it had been assigned the copyright to the individual contributions prior to publication.  Id. at 1329 ("Under the unambiguous terms of section 24 of the 1909 Act, [the publisher] was entitled to renew any initial copyrights in periodical articles that it validly obtained through an informal assignment of [the author's] common law copyrights.").[4]

In short, Section 24 only gave a proprietor the right to renew copyrights in a collective work if the proprietor already owned the copyright (either because the copyright was to a composite element or because the proprietor authored or was assigned an individual contribution).  Plaintiffs do not appear to dispute this interpretation or point to contrary case law, but raise two arguments in response.

Plaintiffs first argue that Willis Music had the right to renew the copyright to the Lyrics because Newlin assigned the copyright to Willis Music prior to publication. Specifically, the Amended Complaint alleges that Newlin transferred her "common law copyright" and "right of first publication" in the Lyrics, while retaining "her copyright and all other rights in the lyrics."  Am.

---

[4] See also Ilyin v. Avon Publications, Inc., 144 F. Supp. 368, 372 (S.D.N.Y. 1956) ("A blanket copyright on an issue of a periodical does not give any rights to a particular article unless such rights had been previously assigned to the publisher.").

Compl. ¶¶ 29-30.  But plaintiffs cannot have it both ways.  Either Newlin assigned to Willis Music the copyright at issue here (and which defendants are alleged to have infringed), in which case plaintiffs have no claim, or Newlin retained the copyright and Willis Music had no right to renew it.

Plaintiffs attempt to avoid this result through artful pleading, alleging that Newlin only assigned her "common law copyright," while retaining her "copyright" and "other rights" in the Lyrics.  This is a distinction without a difference.  As noted above, there was no statutory copyright prior to publication; rather there was only a common law copyright, which was extinguished upon publication.  See Sanga Music, 55 F.3d at 758-59.  If an author assigned her common law copyright prior to publication, the assignee could claim the statutory right, while the assignor was divested of any copyright in his work.  See, e.g., TCA Television Corp. v. McCollum, 151 F. Supp. 3d 419, 428 (S.D.N.Y. 2015) ("[T]he assignee of an author's common law copyright might by virtue of such assignment, claim statutory copyright." (internal quotation marks omitted)), aff'd on other grounds, 839 F.3d 168 (2d Cir. 2016); 1 Nimmer on Copyright § 5.01[B] ("[T]he subsequently obtained statutory copyright vested in such author or authors only if prior thereto, there had not been a transfer of the common law copyright . . . . In the event of such disposition, it was the transferee and not the original

author or authors in whom statutory copyright initially vested. . . . . Once an author assigned his common law copyright in a work, he thereby divested himself of all right to claim copyright in such work.  Such rights passed to his assignee.").

Thus, if Newlin assigned her common law copyright to Willis Music prior to publication, she had no "copyright" or other "rights" in the Lyrics to retain.  In contrast, if Newlin did not assign the copyright or merely licensed it, Willis Music did not own the copyright and had no right to renew.  See TCA Television Corp. v. McCollum, 839 F.3d 168, 187-90 (2d Cir. 2016) (movie producer had no right to renew artists' contribution where artists merely licensed rather than assigned copyrighted performance to producer).  Either way, plaintiffs may not maintain this lawsuit.

Plaintiffs next argue that Goodis v. United Artists Television, Inc., 425 F.2d 397 (2d Cir. 1970), requires avoiding the "harsh" result that would otherwise occur here.  In Goodis, the Second Circuit held that "where a magazine has purchased the right of first publication under circumstances which show that the author has no intention to donate his work to the public, copyright notice in the magazine's name is sufficient to obtain a valid copyright on behalf of the beneficial owner, the author or proprietor."  Id. at 399.  Goodis, however, dealt with the consequences of complying with notice under the 1909 Act's "indivisibility" doctrine, which prevented holders from assigning

10

less than their full copyright.  It did not deal with the right to
renewal, which is at issue here.   Judge Kaplan explained the
difference in Faulkner in rejecting an argument identical to
plaintiffs':

> Plaintiffs invoke Goodis to protect themselves from a
> failure to renew in the twenty-eighth year following
> publication, but the concerns underlying the Goodis
> opinion are not implicated in this situation. The Goodis
> plaintiff had to rely on the actions of his publisher in
> order to obtain copyright protection and, to that
> extent, was at its mercy. In contrast, [plaintiffs]
> needed no one but themselves to file a claim for renewal.
> They faced no trap for the unwary——they simply failed to
> take even the most basic steps to protect the text and
> photographs for which they now claim to own the
> copyrights. While Goodis does stand for the general
> proposition that courts should avoid unnecessarily harsh
> forfeitures when possible, it is not a license for
> plaintiffs to sit on their hands for no apparent reason.
> Therefore, to the extent plaintiffs assert that [they]
> own the copyrights in the Arthur Allen stories, [the
> publisher's] renewal registration was not sufficient to
> keep these works from entering the public domain. To the
> extent that plaintiffs admit that [the publisher] was
> entitled to renewal registration for these works by
> virtue of its copyright ownership, they have no claim
> for copyright infringement. Either way, defendants are
> entitled to summary judgment dismissing [the] copyright
> infringement claims.

Faulkner v. Nat'l Geographic Soc'y, 211 F. Supp. 2d 450, 466
(S.D.N.Y.) (footnotes omitted), modified, 220 F. Supp. 2d 237
(S.D.N.Y. 2002), aff'd sub nom. Faulkner v. Nat'l Geographic
Enterprises Inc., 409 F.3d 26 (2d Cir. 2005).  In short, there is
no reason to extend Goodis to the renewal rights at issue here.[5]

---

[5] Plaintiffs also rely on two secondary sources which to some extent
support its argument with respect to Goodis.  The thrust of these authorities
is that Section 24, in combination with other provisions of the 1909 Act, should

11

Because plaintiffs have failed to establish that Newlin's copyright in the Lyrics was renewed, they have failed to establish that they own a valid copyright as necessary to state a copyright infringement claim.  Accordingly, their claim is dismissed.

## III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  This Memorandum and Order resolves Docket No. 31, and the Clerk of the Court is directed to dismiss the action.

**SO ORDERED.**

Dated:  New York, New York
        March 27, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

be read as permitting proprietors to renew individual contributions that were not separately registered, with the proprietor holding the copyright's record title in constructive trust for the individual contributor's beneficial use. See 3 Nimmer on Copyright § 9.03[B]; Barbara A. Ringer, Copyright Law Revision Study No. 31: Renewal of Copyright (1960) at 149; cf. N.Y. Times Co. v. Tasini, 533 U.S. 483, 508, 121 S. Ct. 2381, 2395, 150 L. Ed. 2d 500 (2001) (Stevens, J., dissenting) (describing Goodis as "creating a legal fiction in which the publisher to whom an author gave first publication rights was considered the legal owner of the author's copyright, which the publisher was deemed to hold in trust for the 'beneficial owner,' the author").  However, not only was this approach rejected by the Faulkner and Self-Realization Fellowship Church courts, it cannot be squared with Section 24's text, which nowhere recognizes the legal fiction of a constructive trust or addresses the trustee's renewal rights.